Dear Mr. Burton:
I am in receipt of your request for an Attorney General's opinion on behalf of the Beauregard Parish School Board concerning their "Teacher Early Signing Incentive" program. Specifically, your Board is concerned with the feasibility of extending the incentive payment to all teachers regardless of when their contract is signed. You state the following events and the order in which they occurred:
 The Board voted, last year, to authorize a $1,000.00 lump sum payment to each teacher who signed a contract on or before July 21, 2000. This "early signing incentive" was designed to address the shortage of fully qualified, certified teachers, and was distinguished from "salary payments" on the theory that the payment was conditional, tied to the early signing of contracts, and that the early signing of contracts allows for better planning/staffing by the Board. The Board was committed to supplementing teacher pay, where possible; however, there was (and is) a concern about the wisdom of committing to such a payment as a recurring obligation.
 The Board has authorized the same payment, once again, for the 2001-2002 school year, and in doing so, expressed the preference that it be extended to all teachers, regardless of when the contract is signed.
 Following its action establishing the "Teacher Early Signing Incentive" program, for the 2000-2001 school year, the Board voted to extend the program to all teachers, regardless of when the contract was signed, and to make the payments effective with the 2000-2001 school year. The Board asked for the opinion of this office, and I enclose herein a letter dated August 23, 2001, addressing that issue. As a result of that opinion, the Board voted once again, and re-instated the program as it was originally conceived, as a "teacher early signing incentive."
You seek an opinion from our office concerning the following:
 Assuming that the Board extends the lump sum payment across-the-board to all teachers, regardless of when the contract is signed, (1) will the Board commit itself, pursuant to LSA-R.S. 17:421.3(D), to the same level of funding for such incentive payments, each year hereafter, and (2) if the payment is across-the-board, regardless of when the contract is signed, may the incentive payment to a teacher be reduced and/or eliminated, if need be, in future years, without violating LSA-R.S. 17:421.3(E)(1)?
Initially, we should note that if the board extends the payment to all teachers regardless of when the contract is signed, the payment cannot properly be characterized as "incentive" or "one-time" supplement." See Attorney General Opinions Nos. 00-211, 95-295 and 95-295A. The payment would properly be characterized as "salary" within the statutes noted below.
City and parish school boards possess the general authority to set teacher pay pursuant to LSA-R.S. 17:81, which states in part:
 A. (1) Each city and parish school board shall determine the number of schools to be opened, the location of school houses, the number of teachers to be employed, and selected teachers and all other certified personnel from recommendations made by the city or parish superintendent as required by this Subsection. The boards shall have authority to employ teachers by the month or by the year, and to fix their salaries; provided that there shall be no discrimination as to sex in the fixing thereof and provided further, that is not the purpose of this Section to require or direct the reduction of any salary, or salary schedule, presently in force. The board shall see that the provisions of the state school law are complied with.
This general authority, however, does not prevent legislative direction. For example, LSA-R.S. 17:421.3 sets forth the minimum salary schedule for teachers. The following sections of that statute provide:
 D. Notwithstanding any other provision of law to the contrary, the funds of any parish or city school board used for supplemental salary to teachers shall continue to be paid to the teacher and shall not be redirected to any other purpose.
 E. (1) On and after August 15, 1993, the amount of the annual salary paid to any teacher in any school year shall not be reduced below the amount of such salary paid during the previous school year, nor shall the amount of the annual salary paid to any teacher be reduced at any time during an academic year.
The Court, in Mouras v. Jefferson Parish School Board, 300 So.2d 540
(4th Cir. 1974) writ denied in 302 So.2d (La. Nov. 15, 1974) (No. 55450), stated the following about the above:
 [1] We conclude that the board's power to `fix their salaries' under R.S. 17:81 includes the power to increase or decrease teachers' salaries, except insofar as R.S. 17:421 provides a "minimum salary schedule.'
The court went on to hold that the reduction of salaries for an entire category of principals was not a demotion in violation of the teacher tenure law. This decision was rendered prior to the enactment of LSA-R.S. 17:421.3(D) and (E).
In the later case of Kuehn v. Calcasieu Parish School Board,647 So.2d 544 (La.App. 3rd Cir. 1994), the court again looked at a local board's authority to reduce salaries. This time the court examined the language of LSA-R.S. 17:421.3(D) which prior to its amendment by a 1988 Act stated:
 Notwithstanding any other provision of law to the contrary, the funds of any parish or city school board heretofore used as supplemental salary shall continue to be passed on to the individual teacher.
The court concluded the following concerning the effect of an amendment:
The 1988 amendment deleted the modifying term "individual" in connection with the word "teacher." It, according to the trial court, "moved the focus from the individual teacher to teachers as a class." Consequently, "the legislative intent was to require local funds which were . . . being used for salaries for teachers and administrators to be used for that purpose, and not be directed to other . . . non-salary purposes."
Therefore, in response to your first question, assuming local funds are involved and pursuant to LSA-R.S. 17:421.3(D) and jurisprudence, if the Board extends the lump sum payment across-the-board to all teachers, without any conditions, it would be indistinguishable from "salary" and the Board will commit itself to the same overall level of funding for such across-the-board incentive payments. However, if the board attaches a condition to its receipt, it is possible to properly characterize it as something other than salary. Furthermore, as discussed in Kuehn, supra, the 1988 amendment to R.S. 17:421.3(D) deleting the modifying term "individual" moved the focus from the individual teacher to teachers as class. As concluded by the court, "the legislative intent was to require local funds which were . . . being used for salaries for teacher and administrators to be used for that purpose, and not be directed to other . . . non-salary purposes." This office, however, feels compelled to note that the Court in Kuehn did not discuss the implications of LSA-R.S. 17:421.3(E) upon its decision, possibly because it only took effect after the factual situation at issue in that case.
In response to our second question, as the payment would properly be characterized as "salary" within the meaning of LSA-R.S. 17:421.3(E)(1), its reduction would violate the provisions of the subsection in the absences of any exception found in LSA-R.S. 17:421(E)(1) or (2).
I hope this opinion sufficiently addressed your concerns. If I can be of further assistance please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ BETH CONRAD ROBINSON ASSISTANT ATTORNEY GENERAL
RPI:BCR:sc
OPINION NUMBER 00-211
July 11, 2000
100 — SCHOOLS AND SCHOOL DISTRICTS — TEACHERS, PRINCIPALS, SUPERINTENDENTS, SABBATICAL LEAVE, EXTRACURRICULAR ACTIVITIES, STUDENTS
LSA-R.S. 17:421.3 LSA-R.S. 17:422.5
In the present case, it appears that the pay that the teacher in question received in 1999-2000 is not a fixed or a regular payment and would not meet the definition of a stipend. Therefore, the provisions in LSA-R.S. 17:421.3 and 17:422.5 would not apply and the School Board would not be required to pay the teacher in question the salary paid in fiscal year 1999-2000.
Mr. Michael L. Hughes Assistant District Attorney Twentieth Judicial District P.O. Box 1247 St. Francisville, LA 70775-1247
Dear Mr. Hughes:
I am in receipt of your request on behalf of the East Feliciana Parish School Board for an Attorney General's opinion concerning LSA-R.S. 17:421.3
and whether this statute requires a teacher to be paid not less than the amount of salary paid to a teacher in fiscal year 2000-2001 rather than fiscal year 1999-2000 even though the additional work that was required in 1999-2000 will not be required in fiscal year 2000-2001. You state the following facts in your request:
 In fiscal year 1999-2000 a tenured certified teacher (not an administor (sic) or principal) executed a nine (9) month contract with the School Board but was paid for nine and one-half (9-1/2) months. The extra two weeks pay was for additional one-time work performed by the teacher at the request of the Board. The teacher's rate of pay for this extra work was consistent with the teacher's salary established under the nine month (9) contract. The extra work required of the teacher in fiscal year 1999-2000 will not be required in fiscal year 2000-2001 and the teacher will sign a nine (9) month contract.
LSA-R.S. 17:421.3 states the following in pertinent part concerning minimum salary schedules for teachers:
 D. Notwithstanding any other provision of law to the contrary, the funds of any parish or city school board used for supplemental salary to teachers shall continue to be paid to the teacher and shall not be redirected to any other purpose.
 E. (1) On and after August 15, 1993, the amount of the annual salary paid to any teacher in any school year shall not be reduced below the amount of such salary paid during the previous school year, nor shall the amount of the annual salary paid to any teacher be reduced at any time during an academic year.
Additionally, LSA-R.S. 17:422.5 states the following concerning reduction in salary for teachers:
 A. Notwithstanding any other provision of law, no city or parish school board shall reduce the salary of any public elementary or secondary school teacher or any group thereof without first holding a public hearing for the purpose of allowing such teacher to appear and be heard at least thirty days before the reduction in salary shall occur. Notice of the meeting shall be published at least thirty days prior to the meeting in the official journal of the parish where the city or parish school board is located.
 B. Any teacher or teachers' group may waive the public hearing required in Subsection A by written waiver submitted to the school board within two weeks of published notice.
In Attorney General Opinion No. 95-295 our office addressed the issue of whether LSA-R.S. 17:422.5 would mandate the School Board to continue paying a stipend to teachers for attending seminars and workshops after school and on the weekends if they do not attend workshops in the future. Our office looked at the definition of a stipend as defined in Black's Law Dictionary, Fifth Edition, which indicates that a stipend is defined as:
 [A] salary; settled pay, fixed or regular payment. Offering made to a clergyman.
Our office concluded the following:
 Since a stipend is considered as part of a teacher's salary and since LSA-R.S. 17:422.5 prohibits the reduction of a teacher's salary without holding a public hearing, a hearing must be held unless waived by the teacher-in-question or teachers' group prior to discontinuing the stipend. Since the statute appears to be clear that a reduction in a teacher's salary can not be made unless the circumstances as discussed above occur, it is not necessary to examine whether the Louisiana Education Quality Support funds, commonly referred to as 8 (g) funds, can be used for purposes of supporting a stipend.
However, as indicated in 95-295-A, an additional conversation with Dr. Malcolm Duplantis indicated that the teachers in LaFourche Parish are not required to participate in the seminars and workshops after school and on the weekends. Considering this, our office concluded:
 . . . the pay teachers would receive is not a fixed or a regular payment and would not meet the definition of a stipend as defined in Black's Law Dictionary and as discussed in Attorney General Opinion 95-295.
 In conclusion, since the proposal to pay teachers $17.25 an hour for voluntarily attending seminars and workshops does not constitute a stipend, LSA-R.S. 17:422.5
would not mandate the School Board to continue paying this hourly rate to teachers even if they do not attend the workshops in the future.
In the present case, it appears that the pay that the teacher in question received in 1999-2000 is not a fixed or a regular payment and would not meet the definition of a stipend. Therefore, the provisions in LSA-R.S.17:421.3 and 17:422.5 would not apply and the School Board would not be required to pay the teacher in question the salary paid in fiscal year 1999-2000.
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________________ BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc
a:\00-211.op
OPINION NUMBER 95-295
100 SCHOOLS AND SCHOOL DISTRICTS — Teachers. Principals Superintendent. Sabbatical Leave, Extracurricular Activities, Students. LSA-R.S. 17:422.5
Since a stipend is considered as part of a teacher's salary and since LSA-R.S. 17.422.5 prohibits the reduction of a teacher's salary without first holding a public hearing, a hearing must be held unless waived by the teacher-in-question or teachers' group prior to discontinuing the stipend.
Mr. Elmo Broussard Supervisor of Personnel of the Lafourche Parish School Board P. O. Box 879 Thibodeaux, Louisiana 70302
Dear Mr. Broussard:
I am in receipt of your request for an Attorney General's opinion wherein you indicate that the Lafourche Parish School Board is interested in fostering excellence in education through, among other things, offering teachers an opportunity to grow professionally by providing seminars and workshops after school and on the weekends. You have indicated that in order to insure and assure full participation by your teaching corps, the School Board would like to give these teachers a stipend of $17.25 an hour for a session that could run from three hours to six hours depending on the specific program.
The School Board is concerned with LSA-R.S. 17:422.5 which forbids the reduction of teachers salaries. Specifically, you request an Attorney General's Opinion as to whether LSA-R.S. 17:422.5 would mandate the School Board to continue paying this stipend to the teachers even if they do not attend workshops in the future. If our response is yes, the School Board would like to know whether there is a solution to avoiding this situation.
LSA-R.S 17:422.5 provides the following:
 A. Notwithstanding any other provision of law, no city or parish school board shall reduce the salary of any public elementary or secondary school teacher or any group thereof without first holding a public hearing for the purpose of allowing such teacher to appear and be heard at least thirty days before the reduction in salary shall occur. Notice of the meeting shall be published at least thirty days prior to the meeting in the official journal of the parish where the city or parish is located.
 B. Any teacher or teachers' group may waive the public hearing required in Subsection A by written waiver submitted to the school board within two weeks of published notice.
The statute does not include any exceptions in which the salary of any public elementary or secondary school teacher or any group thereof can be reduced without first holding a public hearing for the purpose of allowing such teacher to appear and be heard unless the teacher or teachers' group waives the public hearing within two weeks of the published notice. Therefore, it should be determined whether a stipend is considered part of one's salary. A review of Black's Law Dictionary, Fifth Edition, indicates that a stipend is defined as:
 [A] salary; settled pay, fixed or regular payment. Offer made to a clergyman.
Since a stipend is considered as part of a teacher's salary and since LSA-R.S. 17:422.5 prohibits the reduction of a teacher's salary without holding a public hearing, a hearing must be held unless waived by the teacher-in-question or teachers' group prior to discontinuing the stipend. Since the statute appears to be clear that a reduction in a teacher's salary can not be made unless the circumstances as discussed above occur, it is not necessary to examine whether the Louisiana Education Quality Support funds, commonly referred to as 8 (g) funds, can be used for purposes of supporting a stipend.
I hope this opinion has sufficiently addressed your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc b:\95-295.op
OPINION NUMBER 95-295-A
July 28, 1997
100 SCHOOLS AND SCHOOL DISTRICTS — Teachers, Principals Superintendent, Sabbatical Leave LSA-R.S. 17:422.5
Since the proposal to pay teachers $17.25 an hour for voluntarily attending seminars and workshops does not constitute a stipend, LSA-R.S.17:422.5 would not mandate the School Board to continue paying this hourly rate to teachers even if they do not attend the workshops in the future.
Mr. Elmo Broussard Supervisor of Personnel of the Lafourche Parish School Board P. O. Box 879 Thibodeaux, Louisiana 70302
Dear Mr. Broussard:
I am in receipt of the Lafourche Parish School Board's request for reconsideration of Attorney General Opinion 95-295 regarding payment of teacher stipends. A conversation with Dr. Malcolm Duplantis, Superintendent of Schools for the Lafourche Parish School Board, revealed additional information which was not known in the original opinion request. Dr. Duplantis indicated that the teachers in Lafourche Parish are not required to participate in the seminars and workshops after school and on the weekends. Therefore, the pay teachers would receive is not a fixed or a regular payment and would not meet the definition of a stipend as defined in Black's Law Dictionary and as discussed in Attorney General Opinion 95-295.
In conclusion, since the proposal to pay teachers $17.25 an hour for voluntarily attending seminars and workshops does not constitute a stipend, LSA-R.S. 17:422.5 would not mandate the School Board to continue paying this hourly rate to teachers even if they do not attend the workshops in the future.
I hope this opinion has sufficiently clarified this matter. If I can be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc